IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONROE MERRITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-1681 |
| v. | ) | Judge Cercone |
| | ) | Magistrate Judge Bissoon |
| ALAN B. FOGEL., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that the motion for summary judgment, (Doc. 112) filed by Defendants Beerman, Burks, Fairman, Fogel, Folino, Ginchereau, McAnany, Reisinger, Rossi, Scharff, and Watson ("Commonwealth Defendants") be granted. It further is recommended that the motion for summary judgment, (Doc. 113), filed by Defendants America Service Group, Inc., Falor, Harper, Howard-Diggs, Jin, Prison Health Services, Inc., Talabi, and Thorpe ("Medical Defendants") be granted. Finally, it is recommended that summary judgment be granted to Defendant Reese, *sua sponte*.

### II. REPORT

Plaintiff Monroe Merritt ("Plaintiff") is a state prisoner who is incarcerated at the State Correctional Institution at Graterford, Pennsylvania ("SCI-Graterford"). Plaintiff brings the instant lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*., alleging violations of the Eighth Amendment to the Constitution of the United States by the above-named

Defendants. This suit commenced with the receipt of the initial complaint on December 10, 2007. (Doc. 1). Plaintiff's claims initially were dismissed, and his motions to amend the initial complaint were denied, on August 1, 2008. (Docs. 67, 70). The Court of Appeals for the Third Circuit reversed those decisions on October 22, 2009. See Merritt v. Fogel, 349 F.App'x 742, 746-47 (3d Cir. 2009). Plaintiff's amended complaint was filed with this Court on December 22, 2009. (Doc. 82). Plaintiff's state law claims for medical negligence against all Defendants, as well as all of his claims against Defendant Department of Corrections Bureau of Health Services, were dismissed in September 1, 2010. See (Docs. 100, 103).

On January 13, 2011, Commonwealth Defendants filed a motion for summary judgment. (Doc. 112). Medical Defendants filed their motion for summary judgment on the same day. (Doc 113). Plaintiff responded thereto on February 14, 2011. (Docs. 118-120). These motions are ripe for disposition.

A. Facts

Plaintiff alleges that he has been denied appropriate treatment for Hepatitis-C ("HCV")[1] while incarcerated. His allegations span the period of time from July 20, 1998, when he first requested antiviral therapy, through complaints he made in July and August, 2007. See, e.g., (Doc. 118) ¶ 4. Plaintiff asserts that, in 1996, he was evaluated by a physician who recommended him as a candidate for antiviral treatment. In his amended complaint, as well as subsequent filings, Plaintiff cites to excerpts from a letter written by this physician to Defendant Falor as stating that Plaintiff "'likely would be an excellent candidate for therapy with Alpha

---

[1] This Court uses "HCV" as an abbreviation for Hepatitis-C in order to remain consistent with Plaintiff's filings. The record is clear that Plaintiff suffers from Genotype I HCV. (Doc. 116-4) at 1.

2

Interferon.' and that [P]laintiff '. . . would benefit from treatment.'" (Doc. 118) ¶ 1. Plaintiff characterizes this as a recommendation that he receive the treatment that he seeks.[2] Id. ¶ 2.

Plaintiff also submits a copy of the protocol for antiviral treatment of HCV within the Pennsylvania Department of Corrections ("DOC") that was promulgated in January, 2000. (Doc. 120-2). He argues that under this protocol, he was eligible for treatment on several occasions, but was denied for reasons that were outside of this protocol, or were allegedly fraudulent. (Doc. 118) ¶¶ 4-10. For instance, treatment is denied under the protocol for individuals with white blood cell counts ("WBC") of less than 3000, see (Doc. 120-2) at 2. However, Plaintiff indicates that, as of October 2, 2001, his WBC was 3400, but he was denied treatment on November 18, 2001, because his WBC allegedly was too low. (Doc. 118) ¶¶ 6-7. Plaintiff also asserts that on May 7, 2005, his ALT[3] levels were at 377 – almost 10 times greater than normal. However, his requests for antiviral treatment were denied at this time as well. Id. ¶ 8. Plaintiff adduces

---

[2] A reading of the entire paragraph from which the above statements were taken provides somewhat less support for Plaintiff's position, and indicates instead that Plaintiff was merely recommended to undergo a liver biopsy.

> The patient clearly has Hepatitis C infection with chronic active hepatitis, and *in my opinion should have percutaneous liver biopsy* and likely would be an excellent candidate for therapy with alpha interferon. This patient's root of infection is unknown. However, he clearly has the infection and I think would benefit from treatment.

(Doc. 120-1) (emphasis added). The record indicates that Plaintiff underwent liver biopsies in 2005 and 2010. See (Docs. 120-10 and 120-11). Additionally, while Defendants do not object to the admissibility of this letter, the undersigned notes that it is at least arguably admissible under Rule 803(6) of the Federal Rules of Evidence.

[3] ALT, or alanine aminotransferase is an enzyme, the serum concentration of which increases in cases of hepatitis infection. See Stedman's Medical Dictionary 43, 55 (28th ed. 2006).

laboratory reports spanning several years showing that he has in the past, had WBC values greater than 3,000, and that his AST[4] and ALT levels were abnormally high.  (Doc. 120-3).

Plaintiff further alleges that at various times in 2007 he was told that his LFTs[5] were "out of wack[,]" and, if they continued to fall, he should prepare for the worst.  Id. ¶¶ 9, 11.  However, two physicians denied antiviral treatment on these dates, one of whom allegedly advised Plaintiff to "'pray.'"  Id. 9, 11.  Plaintiff also cites, as evidence in support of his case, to excerpts from articles purporting to define the proper standard of HCV patients.  See (Docs. 120-6 and 120-7).

In an unsworn declaration, Plaintiff alleges that the reason that he has been denied the treatment that he seeks is the high cost of antiviral therapy, which he asserts is "approximately $10,000 per course of treatment per inmate."  (Doc. 120-9) ¶ 21.  In furtherance of this assertion, Plaintiff submits a newspaper article outlining the rising costs of running prisons in Pennsylvania, as well as a Rule 26.1 corporate disclosure statement indicating that Defendant Prison Health Services, Inc., is entirely owned by Defendant America Services Group, Inc., and employs Defendants Falor, Jin, and Howard-Diggs.  (Docs. 120-8, 120-10).  The record contains no additional evidence of cost as a motivation to deny antiviral therapy has been adduced.

Defendants counter that Plaintiff's condition has been monitored on a very regular basis, and is not yet at the stage where antiviral therapy is medically necessary.  (Doc. 115) ¶ 2, 29-30; (Doc. 116-19) ¶¶ 11-15.  Instead, it is their position that the monitoring of Plaintiff's disease is a

---

[4] AST, or aspartate aminotranspherase, is an enzyme that is useful in the diagnosis of the existence of a viral hepatitis infection.  See Stedman's Medical Dictionary 166, 169 (28th ed. 2006).

[5] LFT appears to be an abbreviation for "liver function test."  See Liver function tests: MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/003436.htm (last viewed Sept. 6, 2011).

medically appropriate action, given the current state of Plaintiff's liver. Id. ¶¶ 29-30. In support of this, they submit copies of Plaintiff's medical records spanning from June 19, 2005, to October 22, 2007, showing periodic monitoring of Plaintiff's condition by medical staff. (Docs. 116-1 – 116-3, 116-10 – 116-12). Defendants also submit records from Plaintiff's liver biopsy on July 19, 2005, and September 10, 2010.[6] (Docs. 116-6 – 116-8, 116-13). The pathology report from the 2005 biopsy shows a diagnosis of "chronic Hepatitis C with mild portal and lobular inflammation (Grade 1). No Fibrosis/Cirrhosis (Stage 0)." (Doc. 116-6) at 1. The 2010 biopsy revealed Grade 1 portal and lobular inflammation, no necrosis, and no, or "Stage 0," fibrosis. (Doc. 116-13) at 1. Defendants characterize the 2005 and 2010 diagnoses as being identical. (Doc. 116-17) ¶¶ 9-10.

Finally, Defendants submit Plaintiff's blood-test results from April 16, 2008, to August 30, 2010. (Doc. 116-18). These show that the amounts of several chemicals in Plaintiff's blood were abnormal, including his levels of AST and ALT – both of which fluctuated between tests, and were abnormally high. Id. at 1, 5, 10-11, 15, 18. Defendants concede that Plaintiff's liver functions are abnormal, but maintain that, given the results of his periodic liver biopsies, antiviral therapy would "do more harm than good." (Doc. 116-19) ¶¶ 6-7, 11; (Doc. 116-17) ¶ 17.

B. Eighth Amendment Analysis

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In order to succeed on a claim of

---

[6] Defendants assert that DOC protocol requires that liver biopsies are performed on an individual in Plaintiff's condition once every five years. (Doc. 115) ¶ 25.

denial of medical treatment in violation of his Eighth Amendment rights, an inmate must show: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. With respect to the first element of this standard, a medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment." Monmouth Cnty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention. Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second element – deliberate indifference – the Supreme Court has adopted a subjective approach. Farmer v. Brennan 511 U.S. 825, 842 (1994). Farmer teaches that a showing of knowledge of "a substantial risk of serious harm" requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has held that this standard may be met in several scenarios, including when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice, or mere disagreement over a course of treatment, are not violations of the Eighth Amendment. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Moreover, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845.  Additionally, once a prisoner is under a physician's care, a non-medical prison official cannot be considered to be deliberately indifferent merely for failure to respond to a prisoner's medical complaints.  Spruill, 372 F.3d at 236 (citing Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill, 372 F.3d at 236.

It cannot be disputed that HCV is a serious medical need for the purposes of Eighth Amendment jurisprudence.  See, Merritt, 349 F.App'x at 745.  Instead, Defendants argue that the evidence on the record, when viewed in the light most favorable to Plaintiff, does not support the inference that Defendants exhibited deliberate indifference toward Plaintiff's disease.  They assert that the record indicates that the periodic monitoring of the disease that they provided was medically sufficient, and that antiviral therapy is not indicated for Plaintiff, given the stage of his disease at the time of his liver biopsies in 2005 and 2010.  Additionally, they contend that Plaintiff has suffered no harm due to the denial of antiviral therapy.

The evidence presented by the parties, as described above, does not indicate deliberate indifference on the part of Defendants to the treatment of Plaintiff's HCV.  To the contrary, Plaintiff's medical records show Plaintiff received extensive monitoring of his condition, and the results of his biopsies do not indicate that the use of antiviral treatment is necessary or advisable. This is true even under the standard of care submitted by Plaintiff in his response to Defendants'

7

motions for summary judgment. For example, according to the article[7] submitted by Plaintiff that was published by the National Institutes of Health:

> The National Institutes of Health Consensus Development Conference Panel recommended that therapy for hepatitis C be limited to patients who have histological evidence of progressive disease. Thus, the panel recommended that all patients with fibrosis or moderate to severe degrees of inflammation and necrosis on liver biopsy should be treated and that patients with less severe histological disease be managed on an individual basis.

See (Doc. 120-6) at 3. Additionally, the author of another article submitted by Plaintiff in support of his case recommends that "[if] little or no inflammation or damage is present [as indicated by a liver biopsy] (which is typically found), the person should refrain from treatment, as these people are unlikely to progress to serious disease."[8] (Doc. 120-7) at 5. Plaintiff's biopsy results show that the disease has not progressed, and that he suffers from only mild inflammation, and no fibrosis, necrosis, or cirrhosis. See (Doc. 116-6) at 1; see also (Doc. 116-13) at 1. These results, even when viewed in the light most favorable to Plaintiff, do not indicate that antiviral therapy is medically necessary, or that Defendants ignored Plaintiff's condition. Furthermore, even the 1996 letter, on which Plaintiff places so much import, merely recommends that he receive a liver biopsy to confirm that he is a candidate for antiviral treatment. (Doc. 120-1).

Additionally while Plaintiff asserts that Defendants failed to provide antiviral treatment because of its high cost, the record is devoid of support for this position. Thus, the evidence on the record, when viewed in the light most favorable to Plaintiff, does not support the conclusion

---

[7] This article appears, arguably, to be admissible under Rule 803(8) of the Federal Rules of Evidence.

[8] This article is arguably admissible pursuant to Rule 803(18) of the Federal Rules of Evidence.

that a triable issue exists as to whether Defendants exhibited deliberate indifference to Plaintiff's HCV, and summary judgment should be granted to Defendants.

Given the above analysis, and the finding that no triable issues of fact exist in this case with respect to Plaintiff's claims against Medical Defendants and Commonwealth Defendants, it is not necessary for this Court to consider Defendants' additional arguments.

### C. Defendant Reese

A review of the docket in this case shows that an appearance was never entered on behalf of Defendant Reese. A review of the initial complaint (Doc. 1) and the amended complaint (Doc. 82) indicate that the sole allegation against this Defendant is that she "denied medical treatment for Plaintiff." (Doc. 1) at 2. A review of the exhibits attached to the initial complaint show that her only alleged involvement with Plaintiff is that she denied some of his administrative grievances (Doc. 1) at 24, 32.

The above analysis regarding the treatment of Plaintiff's HCV is equally applicable to Defendant Reese as it is to the moving Defendants. Additionally, Plaintiff's allegations against her are insufficient to show personal involvement in any constitutional violation in order for section 1983 liability to attach, as the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement for the purposes of section 1983. See, e.g., Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.

1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause). While these arguments were not raised by this Defendant, Plaintiff had a full and fair opportunity to provide evidence of deliberate indifference to his medical claims, as well as to respond to the assertion of various Commonwealth Defendants that their roles in the grievance review process did not give rise to section 1983 liability. See (Doc. 117) at 13. Accordingly, summary judgment should be granted in favor of Defendant Reese. See Am. W. Home Ins. v. Donnelly Distrib'n, Inc., No. 11-1415, 2011 WL 3330655, at *2 (E.D. Pa. Aug. 2, 2011).

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the motion for summary judgment filed by Commonwealth Defendants, (Doc. 112), be granted. It further is recommended that the motion for summary judgment filed by Medical Defendants, (Doc. 113), be granted. Finally, it is recommended that summary judgment be granted to Defendant Reese, *sua sponte*.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report and recommendation must be filed by September 21, 2011. Failure to file objections will waive the right to appeal. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: September 7, 2011                      s/Cathy Bissoon
                                              CATHY BISSOON
                                              UNITED STATES MAGISTRATE JUDGE

cc:
**MONROE MERRITT**
AY4389
SCI Graterford
PO Box 244
Graterford, PA 19426